IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

_____

| | |
|---|---|
| MONICA JOHNSON § § Plaintiff, § § v. § § ARRIVA MEDICAL, LLC § § Defendant. § | Case No._____ JURY DEMANDED |

# COMPLAINT

**COMES THE PLAINTIFF, MONICA JOHNSON**, filing this Complaint against **ARRIVA MEDICAL, LLC**. She shows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Monica Johnson, is a citizen and resident of Rutherford County, Tennessee.

2. Defendant, Arriva Medical, LLC, is an employer of more than eight (8) persons operating in Davidson County, Tennessee where it employed the Plaintiff.

3. This Court has subject matter jurisdiction under 28 U.S.C. §1332, diversity of citizenship, as the parties are "citizens" of different states (Tennessee and Florida) and the amount in controversy exceeds $75,000.

4. Venue in this Middle District of Tennessee is proper pursuant to 28 U.S.C. §1391, because the Defendant was either doing business in this district, employed Plaintiff in this district, and/or a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BASES FOR SUIT

5. Plaintiff, Monica Johnson, is a female, 35 years old, married, with children.

6. In 2013, Johnson worked for Defendant, earning approximately $13.00 per hour worked. She was supervised in her daily operations by a male named Errol Maurice Jeffries who approved or denied days off, conducted or affected reviews, and could discipline and affect termination decisions.

7. When Johnson began working, she heard remarks that Jeffries was a womanizer and to "watch out" for Jeffries.

8. Indeed, Jeffries began inappropriate physical and sexualized contact toward Johnson—purposefully rubbing his body against hers as they passed each other at work, hips side, etc., and would laugh about it to demonstrate the touch was not innocuous.

9. That habit of Jeffries progressed to touching Johnson's shoulders and neck and also rubbing those areas.

10. Jeffries' habits progressed to telling speaking to Johnson sexually and explicitly and in an unwelcome fashion. For example, he would tell her that he had a breast fetish, that he wanted Johnson's breasts, that he wanted to lay between them, and that he wanted her to breast feed him.

11. Jeffries would stare, glare, and make sexual gestures to Johnson. He also wrote her notes, one time writing her, "Yes, I am thinking about you right now." He would also tell her, in emails, that she had "no idea how gdyoulk [good you look] to me this morning," and that he was "just sprhrny [super horny] for some reason," and that she must "remember to breastfeed me."

12. These types of inappropriate sexualized actions by Jeffries were "pervasive" because they occurred every day.

13. These types of inappropriate sexualized actions by Jeffries were unwelcome by Johnson.

14. Johnson repeatedly asked Jeffries to stop his actions, to no avail.

15. Defendant has typical sexual harassment policies indicating it will not be tolerated, etc., but the decision *whether* to report is nonetheless socially complicated for women, and for Johnson particularly, because there is no guarantee the harasser will be terminated (or at least permanently separated with no contact from Johnson) and, if he is not, the risk of further

harassment or retaliatory harassment or retaliation in the workplace becomes a reality. In other words, *whether* a woman will be better off by reporting, or worse off by reporting, is a real concern, and was for Johnson, particularly in light of the environment that existed—an environment in which existing policies made no difference to Jeffries', an environment in which Johnson was warned about him by other females, and an environment where there were real concerns about the qualifications and authority of a human resource manager who, admittedly, was untrained in the field and lacking in a degree.

16.     Despite these fears, the harassment was so severe that Johnson did report Jeffries to Human Resources. Human Resources told Johnson that she was new to this field, that Johnson could "help me learn," and that she was not even sure how to obtain a handbook for Johnson. In fact, Johnson was concerned that Jeffries was not even taking down all of the appropriate information in their meeting.

17.     Local human resources advised Johnson that a decision had been reached, that Jeffries was merely being "demoted" for the sexual harassment, and would be on an aisle different than Johnson.

18.     Placing Jeffries on a different aisle, or hallway, was insufficient remedial action foreseeably allowing further harassment or retaliatory

harassment.

19. This negligent decision caused even further harm to Johnson who became physically ill with worry and anxiety.

20. Foreseeably, after the demotion, Jeffries again touched Johnson and attempted to act as if this were innocuous.

21. Johnson reported the failed remedial measures taken, including the touching. Becoming defensive toward its actions, Defendant dismissed the touching as innocuous.

22. Johnson returned to human resources to advise she was not safe.

23. However, local human resources was unwilling to take any further action, telling Johnson she just had to trust that things would improve.

24. Johnson suffered further retaliatory harassment with Jeffries calling her "bitch!" on multiple occasions and purposely placing himself in her presence in a threatening manner.

25. Johnson could not withstand the effects of the harassment and the failed remedial measures taken toward Jeffries. She suffered regular crying spells, anxiety at work, what felt like panic attacks, vomiting, problems sleeping, headaches, and inability to cope at work.

26. On or about July 12, 2013, Johnson advised Defendant that she

had no choice but to separate herself from Defendant.  This was not a "voluntary quit" or resignation, but an <u>adverse employment action</u>, or constructive discharge, because Johnson could not physically and emotionally remain with Defendant due to the harassment suffered and the lack of appropriate action taken.

27. Defendant did not fulfill an obligation to adequately prevent sexual harassment through training, discipline, and policy enforcement or distribution.

28. Plaintiff nevertheless did complain to Defendant of the sexual harassment.

29. Defendant did not take *adequate* remedial measures.  It failed to take appropriate corrective action despite its knowledge.

30. Plaintiff has suffered the damage of worry, anxiety, stress, physical distress due to the sexual harassment and lack of appropriate handling by Defendant.  She seeks appropriate compensation, injunctive relief of training and policy distribution and *implementation*, along with any lost wages, her attorneys fees and costs.

### CAUSES OF ACTION

31. Plaintiff brings the following causes of action against Defendant:

    **A.** **Tennessee Human Rights Act, (T.C.A. §4-21-101 et. seq.)**

        1. Sexual Harassment (Hostile Work

Environment); Retaliatory Harassment; and Culmination in a Tangible Job Action (discharge).

**B.    Negligent Supervision and Retention (of Jeffries).**

32.    Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer this Complaint, that Plaintiff be Awarded all compensatory damages available, any wage loss damages available, any other equitable relief, her attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which she may be entitled.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
Jonathan L. Bobbitt (TN Bar No. 023515)
5409 Maryland Way, Suite 150
Brentwood, TN 37027
Telephone:  615-354-1144
Facsimile:   731-664-1540
jgilbert@gilbertfirm.com
jbobbitt@gilbertfirm.com

Jessica F. Salonus (TN Bar No. 28158)
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jsalonus@gilbertfirm.com

*ATTORNEYS FOR PLAINTIFF*